UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JEREMY ZIELINSKI,                          :

      Plaintiff,                          :

        v.                              :
                         No. 12 Civ. 1160 (JPO)

JOANNE M. DEFREEST, JAY P.                 :
DRISCOLL, CHRISTOPHER MCNEILL
and CHRISTINE M. CONNOLLY,                 :

      Defendants.                         :

---

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

PREET BHARARA
United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York   10007
Telephone: (212) 637-2743
Facsimile:   (212) 637-2730

ELLEN BLAIN
Assistant United States Attorney
– Of Counsel –

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    Allegations in the Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . 2

          1.    Plaintiff's Sentencing History . . . . . . . . . . . . . . . . . . . . . . . . . 2

          2.    Plaintiff's Supervised Release . . . . . . . . . . . . . . . . . . . . . . . . . 3

          3.    Plaintiff's Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.    Transfer and Modification of Plaintiff's Supervised Release . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    PLAINTIFF'S REQUESTS FOR EQUITABLE RELIEF MUST BE DISMISSED . . . . . 7

    A.    Plaintiff's Requests for Equitable Relief Against the Officers in
         Their Individual Capacities Must Be Dismissed . . . . . . . . . . . . . . . . . . . 7

    B.    Plaintiff's Request for Equitable Relief Against the Officers in
         Their Official Capacities Must Be Dismissed for Lack of Standing . . . . . . . . . . 8

II.    PLAINTIFF'S *BIVENS* CLAIMS AGAINST THE OFFICERS IN THEIR
    OFFICIAL CAPACITIES SHOULD BE DISMISSED FOR LACK OF SUBJECT
    MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.    PLAINTIFF'S *BIVENS* CLAIMS BASED ON RESTRAINTS ON SPEECH UNDER
    THE FIRST AND FIFTH AMENDMENTS SHOULD BE DISMISSED FOR FAILURE
    TO STATE A CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.    Legal Standard for a Rule 12(b)(6) Motion to Dismiss . . . . . . . . . . . . . . . . 12

    B.    Plaintiff Fails to State a First Amendment Claim . . . . . . . . . . . . . . . . . . . 14

          1.    A *Bivens* Remedy Should Not Be Extended for Plaintiff's First
             Amendment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

          2.    Plaintiff Fails to State a First Amendment Claim . . . . . . . . . . . . . . . 17

    C.    Plaintiff Fails to State a Fifth Amendment Claim
         That the October Letters Were Overly Broad or Vague . . . . . . . . . . . . . . . 18

IV.   THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY WITH
      RESPECT TO ALL OF PLAINTIFF'S CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      A.   The Doctrine of Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      B.   Plaintiff's First, Fourth and Fifth Amendment Rights Concerning Speech and
           Detention Were Not Clearly Established . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      C.   Officers of Reasonable Competence Could Disagree as to Whether
           the Officers' Actions Violated A Constitutional Right . . . . . . . . . . . . . . . . . . . 23

      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Defendants Joanne M. DeFreest ("Officer Defreest"), Jay P. Driscoll ("Officer Driscoll"), Christopher McNeill ("Officer McNeill") and Christine M. Connolly ("Officer Connolly," and collectively with the other defendants, the "Officers"), United States Probation Officers for the Northern District of New York Probation Office ("NDNY PO"), by their attorney, Preet Bharara, United States Attorney for the Southern District of New York, submit this Memorandum of Law in Support of the Defendants' Motion to Dismiss Plaintiff's Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiff Jeremy Zielinski ("Plaintiff"), who is proceeding *pro se*, brings this action against the Officers alleging that they violated his constitutional rights by imposing certain conditions on his supervised release.   Specifically, Plaintiff, who was convicted for committing sexual crimes with a minor, sues the Officers due to the restrictions they placed on his contact with children on Halloween, October 31, 2011.   Plaintiff alleges that such restrictions violated the First, Fourth, Fifth and Sixth Amendments to the United States Constitution, and he seeks monetary damages and equitable relief.

The Amended Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.   First, Plaintiff's requests for equitable relief against the Officers in their individual capacities must be denied because such claims may only be asserted against the Officers in their official capacities.   Plaintiff's requests for equitable relief against the Officers in their official capacities, however, must also be dismissed because he lacks standing to seek such relief for alleged harms that occurred in the past.   *See infra* Point I. Second, Plaintiff's claims for monetary damages pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), against the Officers acting in their official capacities must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because the United States, its agencies and its employees acting in their

official capacities enjoy sovereign immunity from constitutional tort claims.   *See infra* Point II.

Alternatively, to the extent that Plaintiff is asserting *Bivens* claims against the Officers in their

personal capacities, his First Amendment and Fifth Amendment claims based on speech

restrictions must be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to state a claim

related to any purported constitutional violation.   *See infra* Point III.   Finally, to the extent that

Plaintiff does state a claim for any constitutional violation, the Officers are entitled to qualified

immunity, and such claims must be dismissed.   *See infra* Point IV.

## STATEMENT OF FACTS

**A.    Allegations in the Amended Complaint**

    **1.    Plaintiff's Sentencing History**

Plaintiff alleges that, on June 28, 2006, after he was convicted in the District of New

Jersey for conspiracy to commit access device fraud, in violation of 18 U.S.C. § 371, he was

sentenced to a term of 21-months' imprisonment and two years' supervised release.   *See*

Amended Complaint, dated June 29, 2012 ("Compl.") at ¶ 9; *see also* Compl., Ex. A, Minutes of

Proceedings, dated June 28, 2006, 02-cr-786 (WJM) (D.N.J. 2006).

At the time of his conviction on this federal charge, he alleges that he faced outstanding

charges in New York State, Warren County, for engaging in "sexually explicit communications

with an undercover officer . . ."   Compl. ¶ 10.   Having served the entirety of his federal

sentence of imprisonment while in pre-trial detention, Plaintiff was transferred to state custody

after his federal sentence was imposed.   *See id.*   In state court, he pled guilty to one count of

attempted dissemination of indecent material to a minor, one count of promoting a sexual

performance by a child, and one count of bail jumping, in violation of N.Y. PENAL L. CC

110.00/235.22, 263.15, 215.56, respectively.   *See id.*   As a result, Plaintiff was ultimately

registered as a convicted sex offender with New York State and assigned a Risk Level 2.   *See*

Http://www.criminaljustice.ny.gov/SomsSUBdirectory/offederDetails.jsp?offednerid=34739.[1]

### 2.    Plaintiff's Supervised Release

Plaintiff alleges that he understood that his federal term of supervised release would run

concurrently with, and therefore expire during, his detention in state custody.   *See* Compl. ¶ 11.

Plaintiff was released from state custody on January 28, 2011, and alleges that he was not subject

to any state supervision as a result of his state offenses.   *See id.* ¶ 12.   However, Plaintiff

alleges that, eight months later, the United States Probation Office for the District of New Jersey

contacted him and informed him that, pursuant to his federal sentence, he was required to be

supervised until January 28, 2013.   *See id.* ¶ 13.   Although Plaintiff does not identify the time

period, he alleges that the District of New Jersey ultimately transferred jurisdiction of his

supervised release to the Northern District of New York, where he resided.   *See id.* ¶ 14.

Plaintiff alleges that, at the time of his sentencing in federal court in 2006, the district

court imposed the "'standard' conditions of supervised release," requiring that Plaintiff provide

"financial disclosure, not incur new debt unless in compliance with a fine payment schedule,

provide a DNA sample, and submit to inspections of computer equipment."   *Id.* ¶ 15; *see also*

Compl., Ex. A.   Plaintiff alleges that "[a]t the time [of] the incidents forming the basis of this

complaint took place, no other conditions had been imposed and no modifications to the original

terms had been made or sought."   Compl. ¶ 15.   In particular, Plaintiff alleges that he was not

---

[1]   As noted below in more detail, *see infra* at III.A, this Court may take judicial notice of
publicly-available documents without converting a Rule 12(b)(6) motion into one for summary
judgment.   *See, e.g., Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).
    Further, although not alleged in the amended complaint, on July 7, 2011, the Family
Court of the State of New York, County of Warren, issued an order that, *inter alia*, prevented
Plaintiff from having any physical contact with his son, and limited Plaintiff's communication
with his son to once a week.   *See* Declaration of Ellen Blain, dated May 11, 2012, Ex. A.

subject to any "conditions limiting or prohibiting contact with minors," or any other "'sex-offender'- specific" conditions of supervision. *Id.* ¢ 18.

Plaintiff alleges that, on October 13, 2011, Officer Defreest presented him with a letter, signed by Officers Driscoll and McNeil, which forbade Plaintiff from "leaving his home on Halloween, . . . plac[ing] signs, decorations, decorative lights, or 'perceived invitations' on his family's home, . . . answering the door to anyone under eighteen years of age . . . and [participating] in various other activities which traditionally take place on Halloween." *Id.* ¶ 16; *see also* Compl., Ex. B, Letter signed by Officers Driscoll and McNeill, dated October 12, 2011 ("October 12 Letter"). Plaintiff alleges that Officer Defreest explained that such limitations regarding his activities on Halloween were "categorical restriction[s]" that applied to "everyone who is on supervision for a sex offense, who is registered with the state as a sex offender, or who has pending charges of a sexual nature." Compl. ¶ 17. Plaintiff further alleges that Officer DeFreest explained that Plaintiff "met these criteria because he has to register [as a sex offender] as a result of his state convictions." *Id.*

Plaintiff states that he objected to these limitations because: (1) he was not under supervision for a sexual offense; (2) he did not have any "'sex-offender'-specific conditions of supervision;" (3) the terms in the October 12 Letter were vague and undefined; and (4) they applied to Plaintiff's "home instead of to him," thus prohibiting "innocent family members who he lives with from exercising their own rights to celebrate the holidays . . . ." *Id.* ¶¶ 18-21. Plaintiff does not, however, dispute that he was registered (or was required to register) as a sex offender with New York State.

Plaintiff further alleges that after the Officers "made no attempt to schedule a modification hearing [to the terms of his supervised release]," he "demanded in writing that the

[Officers] rescind their unlawful 'instructions' before October 31, 2011." *Id.* ¶ 23; *see also* Compl., Ex. C, Letter from Plaintiff, dated October 25, 2011.   Plaintiff alleges that, on October 28, 2011, he spoke by telephone with Officer Connolly who, according to Plaintiff, "admitted . . . that the defendants had no authority to modify the conditions without a hearing," and modified the "directive slightly to allow [Plaintiff] to go to work on October 31, 2011 . . . ."   Compl. ¶ 24-25; *see also* Compl., Ex. D, Letter signed by Officer Connolly, dated October 28, 2011 ("October 28 Letter," and together with the October 12 Letter, "the October Letters").   In the October 28 Letter, Officer Connolly also stated, "As soon as this district receives jurisdiction of your case, we will be sure to advise you so that a hearing on this matter can be scheduled before a U.S. District Judge."   Compl., Ex. D.   Plaintiff alleges that, as a result of these restrictions, he and "his family were unlawfully prohibited from celebrating this holiday together as they planned and experienced severe emotional trauma and anguish."   Compl. ¶ 26.[2]

### 3.      Plaintiff's Claims

Plaintiff brings this action against the Officers based on the First, Fourth, Fifth and Sixth Amendments.   *See id.* ¶¶ 32-41.   *First,* he alleges that by "imposing what amounted to an adverse modification to the conditions of his supervised release," the Officers violated:   (a) his "right[] to petition the government for redress of grievances," pursuant to the First Amendment; (b) his right to due process of law, pursuant to the Fifth Amendment; and (c) his right to assistance of counsel, pursuant to the Sixth Amendment.   *Id.* ¶ 33, 43.   *Second,* he alleges that by denying him "the liberty to celebrate holidays," the Officers violated:   (a) his right to free

---

[2]   Although Plaintiff does not purport to bring a class action lawsuit, Plaintiff further alleges that the Officers "took similar and identical actions against many other supervisees acting on the same pretextual authority," and therefore "have harmed potentially hundreds or thousands of individuals . . . ."   Compl. ¶¶ 27-28.

speech, pursuant to the First Amendment; and (b) his right to due process of the law, pursuant to the Fifth Amendment. *Id.* ¶ 35, 41. *Third*, Plaintiff alleges that "by "imprisoning [Plaintiff] in his home except to go to his lawful employment on October 31, 2011," the Officers violated: (a) his right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment; and (b) his right to due process of law, pursuant to the Fifth Amendment. *Id.* ¶ 37. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. *See id.*, Prayer for Relief.

**B.   Transfer and Modification of Plaintiff's Supervised Release**

On October 27, 2011, the Honorable William J. Martini, United States District Judge for the District of New Jersey, authorized the transfer of jurisdiction of Plaintiff's supervised release to the United States District Court for the Northern District of New York. *See* Declaration of Ellen Blain, dated September 14, 2012 ("Blain Decl."), Ex. B (Docket No. "Dkt." 1). On November 14, 2011, the Honorable Thomas J. McAvoy, Senior District Judge for the United States District Court for the Northern District of New York, accepted jurisdiction. *See id.*

On November 16, 2011, Officer DeFreest requested a hearing to modify the conditions of Plaintiff's supervised release. *See id.*, Ex. C (Dkt. 2). The Government requested that the court impose additional conditions in order to, *inter alia*, direct Plaintiff to participate in a mental health program and prevent him from having any contact with children. *See id.*, Ex. D (Dkt. 3). In support of the request for modification, the Government submitted a brief detailing the information that the NDNY PO possessed relating to Plaintiff's sex crimes. *See id.*, Ex. E (Dkt. 20). That information included materials from the Warren County criminal investigation, such as, *inter alia*, Plaintiff's written account of his crimes; a letter from Assistant Attorney General Nancy D. Snyder describing the pornographic materials found on Plaintiff's computer; and the

Pre-Sentence Investigation Report diagnosing Plaintiff with Sexual Sadism and concluding that he was likely to repeat his crimes.   *See id.*, Ex. F (excerpts from Dkt. No. 21-1).

On February 2, 2012, Judge McAvoy held a supervised release modification hearing. *See* Blain Decl., Ex. G (Dkt. No. 23).   The court sentenced Plaintiff to home confinement for six months, ordered that Plaintiff remain under supervised release for another twenty-four months, and further ordered:

> 1) except for deft's own child, no direct and/or indirect contact w/ minors 2) refrain from any area where minors are likely to congregate 3) sex offender registration 4) mental health treatment w/ polygraph use 5) personal computer use prohibition 6) employment computer restriction w/ 3rd party notification 7) employment computer prohibition if recommended by treatment provider 8) submit to searches 9) refrain from sexually explicit materials 10) cost contribution and 11) refrain from excessive use of alcohol.

*Id.*

## ARGUMENT

**I.    PLAINTIFF'S REQUESTS FOR EQUITABLE RELIEF MUST BE DISMISSED**

Along with compensatory and punitive damages, Plaintiff seeks an injunction preventing the Officers from "issuing any further 'instructions' unless they are . . . consistent with other more specific conditions of release imposed by the sentencing court,"   and removing Officer Defreest from her position as a probation officer.   Compl., Prayer for Relief ¶¶ C-F.   Plaintiff also seeks a declaration that: (a) the Officers violated his constitutional rights; (b) probation officers may only issue "instructions that implement, and that are consistent with, other more specific conditions of supervised release;" and (c) a violation of a supervisee's constitutional rights "is sufficient cause to remove a probation officer from" her position.   *Id.* ¶¶ A-B, G.

> **A.    Plaintiff's Requests for Equitable Relief Against the Officers in Their Individual Capacities Must Be Dismissed**

It is well-settled that the real party in interest in an action against federal officers seeking

7

injunctive or declaratory relief is the Government. *See, e.g., Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) ("The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."); *see also Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).   Here, Plaintiff's claims seeking injunctive and declaratory relief against the Officers may only proceed against them, if at all, in their official capacities. *See Frank v. Relin*, 1 F.3d 1317, 1326-27 (2d Cir. 1993).   Accordingly, Plaintiff's equitable claim against the Officers in their individual capacities must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).   *See, e.g., Frank*, 1 F.3d at 1226.

**B.      Plaintiff's Request for Equitable Relief Against the Officers in Their Official Capacities Must Be Dismissed for Lack of Standing**

Because Judge McAvoy modified Plaintiff's conditions of supervised release to include restrictions related to contact with children, Plaintiff lacks standing to assert claims for declaratory or injunctive relief and, accordingly, his requests for equitable relief against the Officers in their official capacities must also be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

On a motion to dismiss pursuant to Rule 12(b)(1), plaintiff carries the burden of establishing that subject matter jurisdiction exists over his complaint.   *See Robinson*, 21 F.3d at 507; *see also Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990).   A court must "accept as true all material factual allegations in the complaint," but refrain from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citations omitted).   Moreover, a plaintiff must prove that subject matter jurisdiction exists by a preponderance of the evidence.   *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

8

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshhold requirement imposed by Article III of the Constitution . . . ." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).   Article III standing requires: "(1) an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) redressability of the injury by a favorable decision."   *Harty v. Simon Prop. Grp., L.P.*, No. 11 Civ. 110, 2011 WL 2559227, at *1 (2d Cir. June 29, 2011) (citation omitted).   Thus, a plaintiff must allege "an actual case or controversy."   *Lyons*, 461 U.S. at 101.   To do so, a plaintiff must establish that he "is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct, and the threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."   *Lyons*, 461 U.S. 102 (citing *Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969)) (further citations omitted).

To demonstrate a right to equitable relief, past experience of actual harm is insufficient to present an actual case or controversy "if unaccompanied by any continuing, present adverse effects."   *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).   Thus, a plaintiff's "standing to seek the injunction requested depend[s] on whether he [is] likely to suffer future injury" from the actions alleged in the complaint.   *Lyons*, 461 U.S. at 105.   Indeed, an "equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again – [a] 'likelihood of substantial and immediate irreparable injury.'"   *Id.* at 110 (quoting *O'Shea*, 414 U.S. at 502).

Here, Plaintiff lacks standing to seek equitable relief because, in the wake of the supervised release modification hearing, he cannot demonstrate a likelihood of experiencing

similar harm in the future.   Specifically, after conducting the modification hearing (which Plaintiff requested, *see* Compl. ¶ 15 n.1), Judge McAvoy held that Plaintiff could not have any "direct and/or indirect contact [with] minors" and must "refrain from any area where minors are likely to congregate."   Blain Decl, Ex. G.[3]   The restrictions imposed upon Plaintiff in 2011 by the October Letters regarding Halloween, *see* Compl., Ex. B, are thus entirely "consistent with," Compl., Prayer for Relief ¶ B, the court-ordered modifications governing Plaintiff's supervised release going forward.   Moreover, Plaintiff himself acknowledges that there may not be any constitutional violation if the restriction set forth in the October Letters are imposed in a case where, as here, "a supervisee has sex offender-specific conditions of release or prohibitions on contact with minors."   Compl., Ex. C at 1 n.2.

Therefore, Plaintiff's claimed need for injunctive relief – that the Officers may impose sex offender-specific restrictions on his supervised release in the absence of a court order – will not be repeated because the court has now imposed sex offender-specific conditions that are entirely consistent with the conditions that the Officers previously imposed.[4]   *See, e.g., Lyons*, 461 U.S. 102; *Ya-Chen Chen v. City Univ. Of New York*, No. 11 Civ. 0320(CM), 2011 WL 5419792, at *9 (S.D.N.Y. Nov. 9, 2011) (dismissing Section 1983 claim for injunctive relief because plaintiff did "not alleged any ongoing violation of federal law, and it is evident that she

---

[3]   In deciding a Rule 12(b)(1) motion, a court is not limited to the face of the complaint and may consider evidence outside the pleadings to resolve disputed factual issues.   *See State Emp. Bargaining Agent Coal, v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007); *Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002).

[4]   Similarly, in light of Judge McAvoy's order, Plaintiff's request for equitable relief is also now moot.   *See Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011) ("Similar[] [to the standing requirement], the mootness doctrine ensures that the occasion for judicial resolution established by standing persists throughout the life of a lawsuit."); *DiStefano v. Communications Workers of America, Local 1101*, No. 10 Civ. 1166(LTS)(FM), 2012 WL 1080249, at *3 (S.D.N.Y. Mar. 30, 2012).

could not do so, since her employment with [defendant] has ended")[5]; *Pasternak v. Baines*, No. 00 Civ. 0369C(JTC), 2006 WL 2570982, at *8 (W.D.N.Y. Sept. 5, 2006) (dismissing claim because "plaintiff has alleged no ongoing violations of federal law, only discrete acts of past discrimination and retaliation by defendant"); *Fink v. Time Warner Cable,* No. 08 Civ. 9628(LTS)(KNF), 2011 WL 3962607, at *11 (S.D.N.Y. Sept. 7, 2011). Any future threat of a purported constitutional violation is thus not "real and immediate," *Lyons*, 461 U.S. at 102, and Plaintiff's claims for equitable relief against the Officers in their official capacities must be dismissed.

## II.  PLAINTIFF'S *BIVENS* CLAIMS AGAINST THE OFFICERS IN THEIR OFFICIAL CAPACITIES SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

To the extent that Plaintiff seeks money damages from the Officers acting in their official capacities for alleged constitutional violations pursuant to *Bivens*, the claim is properly one against the United States. Such a claim, however, is barred by the doctrine of sovereign immunity, and the Court therefore lacks subject matter jurisdiction over Plaintiff's claim for money damages against the Officers in their official capacities.

While a plaintiff may bring a claim against a federal officer in his personal capacity for violations of certain constitutional rights, *see Bivens*, 403 U.S. at 397, *Bivens* suits against officers of the United States acting in their official capacities are considered suits against the United States. *See Robinson*, 21 F.3d at 510. Such claims against the United States are barred by the doctrine of sovereign immunity. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994)

---

[5]  Although the constitutional claims asserted in certain cases cited in this brief were brought under 42 U.S.C. § 1983, federal courts have typically incorporated Section 1983 case law into other cases alleging federal constitutional violations. *See, e.g., Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995).

(holding that "the United States simply has not rendered itself liable . . . for constitutional tort claims"); *see also Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994); *Chen Chao v. Holder*, No. 10-CV-2432(RRM)(LB), 2011 WL 6837761, at *3 (E.D.N.Y. Dec. 29, 2011) (dismissing constitutional claims against the federal defendants in their official capacities on sovereign immunity grounds); *Paulino-Duarte v. United States*, No. 02 Civ. 9499(RCC), 2003 WL 22533401, at *3 (S.D.N.Y. Nov. 3, 2007); *Sereika v. Patel*, 411 F. Supp. 2d 397, 402 (S.D.N.Y. 2006). Absent a waiver of sovereign immunity, the Court lacks subject matter jurisdiction. *See, e.g., Kingsley v. BMW of North America LLC*, Nos. 12 Civ. 234(JPO), 2012 WL 1605054, at *3 (S.D.N.Y. May 8, 2012). Therefore, to the extent that Plaintiff is asserting constitutional tort claims against the Officers in their official capacities, such claims must be dismissed for lack of subject matter jurisdiction.

## III.   PLAINTIFF'S *BIVENS* CLAIMS BASED ON RESTRAINTS ON SPEECH UNDER THE FIRST AND FIFTH AMENDMENTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

To the extent Plaintiff is seeking damages from the Officers in their individual capacities, Plaintiff's claims that the Officers violated his First Amendment rights to freedom of association, speech, assembly, and to petition the Government must be dismissed for two reasons. First, a First Amendment *Bivens* remedy has not been recognized, and second, Plaintiff fails to state a claim. Similarly, Plaintiff's claim that the Officers violated his Fifth Amendment right to be free from overly broad and vague restraints on speech must be dismissed for failure to state a claim.

### A.   Legal Standard for a Rule 12(b)(6) Motion to Dismiss

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true the well-pleaded factual allegations set forth in the complaint and draw all reasonable inferences

in favor of the plaintiff.   *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).   In so doing, the court need not give "credence to plaintiff's conclusory allegations" or legal conclusions offered as pleadings.   *Cantor Fitzgerald v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002) (internal quotation marks omitted).   Indeed, the court should begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."   *Iqbal*, 129 S. Ct. at 1950. If well-pleaded factual allegations exist, the court must then determine whether they plausibly give rise to an entitlement for relief.   *Id.*   Although held to a less stringent standard, even a *pro se* plaintiff may not rely on conclusory allegations, but must allege facts which, if proven, would entitle the plaintiff to relief.   *See Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993).

> When determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes,
>
> consideration is limited to the factual allegations in [plaintiff's . . .] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit.

*Brass*, 987 F.2d at 150.   Moreover, on a Rule 12(b)(6) motion, the court may take judicial notice of publicly filed documents.   *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (noting that a court may examine public documents to determine "what the documents stated, and not to prove the truth of their contents") (citation omitted); *see, e.g., Ives Lab., Inc. v. Darby Drug Co.*, 638 F.2d 538, 544 n.8 (2d Cir.1981), *rev'd on other grounds, Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844 (1982) (taking judicial notice of several indictments to establish that such indictments had in fact been returned, but "of course express[ed] no opinion as to the guilt or innocence of those indicted"); *E.I. du Pont de Nemours & Co. v. Cullen*, 791 F.2d 5 (1st Cir. 1986) (taking judicial notice of a complaint that had been filed in a related state court action).

**B.     Plaintiff Fails to State a First Amendment Claim**

Plaintiff asserts that the Officers violated his First Amendment rights by "imposing what amounted to an adverse modification to the conditions of his supervised release without his consent," thus imposing "prior restraints on speech" and violating his right to petition the government and his freedom of speech, association and assembly.   Compl. ¶¶ 35, 37, 41.

**1.     A *Bivens* Remedy Should Not Be Extended for Plaintiff's First Amendment Claim**

As an initial matter, whether a remedy exists for a First Amendment violation under *Bivens* is in doubt.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 (2009).   Since deciding *Bivens*, the Supreme Court has only expanded the doctrine to encompass violations of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 19-23 (1980), and the equal protection component of the Due Process Clause, *see Davis v. Passman*, 442 U.S. 228, 244-49 (1979).   Indeed, since *Carlson*, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants."  *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (finding no right of action under *Bivens* for damages against private entities acting under color of federal law); *see also Wilkie v. Robbins*, 551 U.S. 537, 550 (2007) (stating that, "in most instances, we have found a *Bivens* remedy unjustified") (collecting cases rejecting creation of new *Bivens* cause of action).  *But see Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 365 (S.D.N.Y. 2011) (recognizing a First Amendment retaliation claim in the prison context).

The decision regarding whether to recognize a new *Bivens* remedy requires two steps.   *See Wilkie*, 551 U.S. at 550.   First, a court must determine "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."  *Id.* (citation omitted).   Second, "even in the absence of an alternative, a *Bivens* remedy is a subject of judgment," and a court "must make

the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation." *Id.* (citation omitted).

In the context of the First Amendment, the Supreme Court has recently noted that it has "declined to extend *Bivens* to a claim sounding in the First Amendment." *See Iqbal*, 129 S.Ct. at 1948 (citing *Bush v. Lucas*, 462 U.S. 367 (1983) (refusing to allow a *Bivens* suit on the ground that Congress had created adequate alternative remedies, but generally recognizing the existence of such a cause of action for violations of the First Amendment)). The Second Circuit has also declined to recognize such a claim. *See Hudson Valley Black Press v. I.R.S.*, 409 F.3d 106, 109 (2d Cir. 2005) (noting that "[w]hile the plaintiff invokes *Bivens* in seeking damages for the violation of its rights protected by the First Amendment, subsequent cases threshing out 'the special factors' alluded to in *Bivens* make it impossible for plaintiff to prevail," and dismissing First Amendment claim); *see also Sugrue v. Derwinski*, 26 F.3d 8 (2d Cir. 1994) (declining to recognize First Amendment claim where a veteran brought a claim for damages against employees of the Department of Veterans Affairs, alleging violations of his right to due process). *But see, e.g., Roseboro*, 791 F. Supp. 2d at 365; *Heicklen v. U.S. Dept. of Homeland Sec.*, No. 10 Civ. 2239(RJH)(JLC), 2011 WL 3841543, 12 (S.D.N.Y. Aug. 30, 2011) (assuming without deciding that a First Amendment claim is actionable under *Bivens*), *adopted*, 2011 WL 4442669 (S.D.N.Y. Sep 23, 2011).

In this case, both of the *Wilkie* factors weigh against the creation of a new *Bivens* remedy based on Plaintiff's First Amendment rights to speech, assembly, association and petition. First, pursuant to 18 U.S.C. § 3583 and Fed. R. Crim. Proc. 32.1, felons under supervision have an "alternative, existing process for protecting [their] interest" in ensuring that parole modifications

15

do not affect their First Amendment rights to speech, assembly, association and petition – a supervisee can (and, in this case, did) seek a modification hearing to determine whether the Halloween restrictions would be appropriate. *Wilkie*, 551 U.S. at 550.[6]   Second, "special factors counseling hesitation" are present and particularly compelling here. *Id.*   Plaintiff requests that this Court hold that, in effect, a felon convicted of a sex crime involving minors has a First Amendment right to be free from restrictions designed to limit his interactions with children in the context of Halloween celebrations.   Plaintiff's request, however, is only undermined by fact that Judge McAvoy ultimately modified Plaintiff's supervised release to entirely prevent him from having any contact with minors.   Accordingly, of all the circumstances in which to create a new constitutional cause of action under the First Amendment to sue federal employees for monetary damages, this is surely not it.   *Compare Schweiker v. Chilicky*, 487 U.S. 412 (1988) (declining to recognize a *Bivens* remedy for Social Security recipients whose benefits had been terminated improperly in violation of the Due Process Clause); *United States v. Stanley*, 483 U.S. 669, 684 (1987) (holding that no *Bivens* remedy is available for injuries that arise out of or are incident to service in the military) (internal quotation and citation omitted); *Saleh v. Holder*, No. 09 Civ. 9066(DAB)(GWG), 2010 WL 5376210, at *9 (S.D.N.Y. Dec. 29, 2010) (noting that "the Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts,'" and that "[i]n the 38 years since *Bivens*, the Supreme Court has extended it twice only") (citations omitted), *aff'd*, 2011 WL 797500 (S.D.N.Y. Mar. 4, 2011).

---

[6]   Although the modification hearing in this case was held after Plaintiff's purported First Amendment rights were violated, it does not change the fact that Congress has specifically provided a means by which supervisees can challenge modifications to the terms of their supervised release.   Moreover, Plaintiff was apprised of these conditions before Halloween and, presumably, could have sought expedited treatment of his claim that the conditions were unconstitutional.

### 2.    Plaintiff Fails to State a First Amendment Claim

Even assuming, *arguendo*, that Plaintiff could pursue a *Bivens* claim for violation of the First Amendment, his claim nevertheless must be dismissed pursuant to Rule 12(b)(6). Regarding the rights of a supervisee to freedom of speech, association and assembly, *see* Compl. ¶¶ 35, 41, supervised release conditions may include restrictions on fundamental rights "if such restrictions are 'reasonably related to rehabilitating the defendant and protecting the public.'" *United States v. Porter*, 555 F. Supp. 2d 341, 344 (E.D.N.Y. 2008) (quoting *United States v. Monas*, No. 99-1752, 2000 WL 665559, at *2 (2d Cir. May 18, 2000)); *see also United States v. Porotsky*, 105 F.3d 69, 71-72 (2d Cir.1997) (per curiam).

Here, any restriction imposed upon Plaintiff relating to Halloween is, *first*, reasonably related to the goal of rehabilitation because it "reinforc[es] [defendant's] perception that misdeeds do result in constraints on freedom," and, *second*, serves the goal of protecting the public by "alleviat[ing] the danger to society posed by the possibility that [the defendant] might repeat similar offenses," such as sex crimes with minors.  *United States v. Friedberg*, 78 F.3d 94, 97 (2d Cir. 1996); *see also Porter*, 555 F. Supp. 2d at 344 (finding that requiring supervisee to wear a GPS monitor did not violate First Amendment); *see also United States v. Crandon*, 173 F.3d 122, 128 (3d Cir. 1999) (upholding condition of supervised release implicating constitutionally privileged rights of speech and association as it was "narrowly tailored" and "directly related to deterring [the defendant] and protecting the public"); *United States v. Ritter*, 118 F.3d 502, 505 (6th Cir. 1997) ("[T]hough supervised release restrictions may affect constitutional rights such as First Amendment protections, most restrictions are valid if directly related to advancing the individual's rehabilitation and to protecting the public from recidivism.").

Similarly, regarding his right to petition the government, "the First Amendment functions only to prohibit the government from *obstructing* the right to petition." *Boddie v. Alexander*, 356 F. App'x 438, 440-441 (2d Cir. 2009) (emphasis in original) (citing *Smith v. Ark. State Highway Employees, Local 1315*, 441 U.S. 463, 465 (1979) ("the First Amendment does not impose any affirmative obligation on the government to listen, to respond or . . . to recognize [a grievance]")). Accordingly, because Plaintiff does not allege that the Officers prevented him from seeking judicial review of the supervision conditions – indeed, Exhibit D to his complaint demonstrates that Officer Connolly offered to alert him when jurisdiction was transferred in order to schedule such a hearing – this claim fails.   As a result, Plaintiff's claims based on the First Amendment must be dismissed.

### C.     Plaintiff Fails to State a Fifth Amendment Claim That the October Letters Were Overly Broad or Vague

Plaintiff asserts that the restrictions prohibiting him from "assembl[ing] with and speak[ing] to adults and . . . post[ing] expressive signs, decoration and lighting" are overly broad and unconstitutionally vague, in violation of the Fifth Amendment.   They are neither.

"Due process requires that the conditions of supervised release be sufficiently clear to 'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" *United States v. Simmons*, 343 F.3d 72, 81 (2d Cir. 2003) (quoting *United States v. Cabot*, 325 F.3d 384, 385 (2d Cir. 2003)).   A condition of supervised release must provide the probationer with conditions that "are sufficiently clear to inform him of what conduct will result in his being returned to prison," and violates due process if "men of common intelligence must necessarily guess at its meaning and differ as to its application." *Simmons*, 343 F.3d at 81 (internal quotation marks and citations omitted).   These conditions "need not be cast in letters six feet high, or . . . describe every possible permutation, or . . . spell out

18

every last, self-evident detail," but rather must simply "provide the defendant sufficient notice of what conduct is prohibited 'even if they are not precise to the point of pedantry.'"   *United States v. MacMillen*, 544 F.3d 71, 76 (2d Cir. 2008) (citation omitted).   In addition, the conditions must be analyzed "in light of the conduct with which a defendant is charged."   *Farrell v. Burke,* 449 F.3d 470, 491 (2d Cir. 2006).   Courts thus "uphold broad conditions of supervised release so long as they are sufficiently clear to provide the defendant with notice of what conduct is prohibited."   *United States v. Green*, 618 F.3d 120, 124 (2d Cir. 2010)

Here, the Halloween restrictions were sufficiently narrow – they forbade Plaintiff on a specific date (*i.e.*, October 31, 2011) from turning on his "outside lights" and placing any "perceived invitations to children to approach or enter [his] residence, such as an open door, decorative lights, welcome signs or bowls of treats/candy;" directed Plaintiff to lock and not answer his door "unless the person is an adult and no one under the age of 18 is with them;" prohibited Plaintiff from "handing out treats to passer[s]by;" and directed him not "leave any unattended bowls of candy or any other intriguing treats at [his] home."   October 12 Letter at 1. *See, e.g., MacMillen*, 544 F.3d at 74-75 (upholding condition of supervised release prohibiting defendant from "being on [sic] any areas or locations where children are likely to congregate[,] such as schools, daycare facilities, playgrounds, theme parks, arcades, recreational facilities, and recreation parks") (internal notations in original); *United States v. Dupes*, 513 F.3d 338, 342-44 (2d Cir. 2008) (upholding condition requiring defendant "to stay more than one hundred feet from places primarily used by children such as schoolyards, playgrounds and arcades"); *United States v. Johnson*, 446 F.3d 272, 280 (2d Cir. 2006) (upholding condition prohibiting defendant from being "in any area in which persons under the age of 18 are likely to congregate, such as school grounds, child care centers, or playgrounds").

19

The Halloween restrictions were also sufficiently clear.   The meanings of "perceived invitations," "signs," and "decorative lights" are unambiguous in the context of a Halloween celebration, and "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Johnson,* 446 F.3d at 280.   *See, e.g., Farrell*, 449 F.3d at 492 (finding plaintiff's vagueness challenge concerning definition of "pornography" in relation to special release condition unavailing).   Accordingly, Plaintiff's claim that the October Letters were overly broad and vague in violation his Fifth Amendment rights must be dismissed.

## IV.   THE OFFICERS ARE ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO ALL OF PLAINTIFF'S CLAIMS

Plaintiff alleges that the Officers violated his First, Fourth, Fifth and Sixth Amendment rights by preventing him from celebrating Halloween; directing him to remain in his house overnight; and modifying the conditions of his supervised release without a hearing and without Plaintiff's representation by counsel.   However, any First, Fourth and Fifth Amendment rights purportedly implicated by the restrictions contained in the October Letters were not clearly established at the time of the events alleged in the complaint, entitling the Officers to qualified immunity.   Moreover, even assuming, *arguendo*, that any constitutional right was clearly established, it was nevertheless reasonable for the Officers to believe in the legality of their actions, further entitling them to qualified immunity.

### A.   The Doctrine of Qualified Immunity

The doctrine of qualified immunity "recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated." *Davis v. Scherer*, 468 U.S. 183, 195 (1984).   Thus, to ensure that government officials do "not err always on the side of caution because they fear being sued," the "qualified immunity standard gives ample room

for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotations and citations omitted). In light of these considerations, the Supreme Court has emphasized that qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).   Accordingly, a qualified immunity ruling "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).[7]

Qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   Generally, courts perform a two-step analysis in determining whether an official is entitled to qualified immunity.   *See Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002); *but see Pearson v. Callahan*, 129 S. Ct. 808, 812 (2009) (holding that a court may use "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").   "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citation omitted).   If a plaintiff does not allege a constitutional violation,

---

[7]   Pending resolution of the Officers' motion to dismiss, the Officers respectfully request a stay of any discovery as to Plaintiff's claims against them.   The Supreme Court has instructed that "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818; *see also Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 67 (2d Cir. 1999).   Likewise, in *Smith v. Reagan*, 841 F.2d 28 (2d Cir. 1988), the Second Circuit instructed that a motion to dismiss on qualified immunity grounds could not be held in abeyance while discovery proceeded, as "[t]he purpose of early determinations of immunity defenses is, after all, to lift the burdens of litigation from a defendant who should not be a party at all." *Id.* at 31.

"there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

But if a plaintiff does adequately allege a constitutional violation, a court must determine first whether the constitutional right at issue was clearly established at the time of the alleged infringement. *See Saucier*, 533 U.S. at 201-202.   And second, "'[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (quoting *Higazy v. Templeton*, 505 F 3d 161, 169-70 (2d Cir. 2007)). "That is, officers are entitled to qualified immunity if 'officers of reasonable competence could disagree' as to legality of their action." *Felmine v. City of New York*, No. 09–CV–3768, 2011 WL 4543268, at *9 (E.D.N.Y. Sept. 29, 2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).[8]

### B.   Plaintiff's First, Fourth and Fifth Amendment Rights Concerning Speech and Detention Were Not Clearly Established

Here, as discussed above, Plaintiff has not stated a claim that his constitutional rights under the First and Fifth Amendments were violated.   For the same reasons, he can identify no authority for the proposition that any First and Fifth Amendment rights concerning the restrictions contained in the October Letters were clearly established at the time of the events alleged in the complaint, and the Officers are therefore entitled to qualified immunity as to those claims.

Similarly, Plaintiff's Fourth Amendment right concerning the October Letters' directive

---

[8]   A qualified immunity defense can be "successfully asserted in a Rule 12(b)(6) motion" where "the complaint itself established the circumstances required as a predicate to a finding of qualified immunity." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (internal citation and quotation omitted).   *See also LaFlamme v. Societe Air France*, No. 08-CV-1079(KAM), 2010 WL 1292262, at *9 (E.D.N.Y. Apr. 5, 2010) (granting motion to dismiss based on qualified immunity).

that he remain indoors on the evening of October 31, 2012 was also not clearly established at the time, further entitling the Officers to qualified immunity for that claim. While the right to be free from unreasonable searches and seizures is clearly established under Fourth Amendment, there are circumstances "where government officials have 'special needs beyond the normal need for law enforcement [that] make the warrant and probable-cause requirement impracticable.'" *Tenenbaum v. Williams*, 193 F.3d 581, 603 (2d Cir. 1999) (quoting *O'Connor v. Ortega*, 480 U.S. 709, 720 (1987)); *see also Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (concluding that the supervision of probationers constituted a "'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large"). Here, even assuming that the requirement that Plaintiff remain in his house for one evening constituted a warrantless arrest, the public's interest in preventing Plaintiff from interacting with children on that evening constituted a "special need" permitting such a warrantless arrest. *See id.* Under such circumstances, Plaintiff's Fourth Amendment right that he not be confined to his home absent a warrant for his arrest was not clearly established. Thus, the Officers are entitled to qualified immunity, and Plaintiff's claims must be dismissed pursuant to Rule 12(b)(6).

## C. Officers of Reasonable Competence Could Disagree as to Whether the Officers' Actions Violated a Constitutional Right

Even assuming that any of Plaintiff's constitutional rights were clearly established at the time of the October Letters,[9] the Officers are nevertheless entitled to qualified immunity because,

---

[9] Regarding Plaintiff's claim based on a violation of his Fifth Amendment right to due process concerning supervision modifications,"a defendant has certain constitutional due process rights," including the "requirement that the defendant be afforded a hearing" regarding proposed changes to his supervised release conditions. *United States v. Fleming*, No. CR–88–00473 (CPS), 1993 WL 105181, at *1 (E.D.N.Y. Feb. 10, 1993) (citations omitted). Similarly, regarding Plaintiff's claim based on a violation of his Sixth Amendment right to counsel, Federal Rule of Criminal Procedure 32.1(c)(1) explicitly provides that, "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing, at which the person has the right to counsel . . . ."

as set forth above, *supra* at 21-23, based on the facts alleged in the complaint and the facts of which the Court can take judicial notice, officers of reasonable competence could disagree as to whether the Officers' actions were lawful.[10]

As an initial matter, Plaintiff admits that he committed sex crimes involving minors – specifically, the attempted dissemination of indecent material to a minor, in violation of N..Y. PENAL L. c 110.00/235.22, and promoting a sexual performance by a child, in violation of N.Y. PENAL L. c 215.56. *See* Compl. ¶ 10. In addition, Plaintiff does not dispute that he was required to register as a sex offender with New York State. *See* Http://www.criminaljustice.ny.gov/SomsSUBdirectory/offederDetails.jsp?offednerid=34739 (listing Plaintiff's "conviction charges," "offense description" and "modus operandi"); *see also* Compl. ¶ 18 (not disputing that he met the criteria for receiving the October Letters based on his sex-offender registration requirement). Moreover, as demonstrated on the New York State sex-offender website, Plaintiff was identified as being a Risk Level 2, indicating a moderate (defined as more than a low but less than a high) risk of repeating his sexual crimes. *See id.*; *see also* http://www.criminaljustice.ny.gov/nsor/risk_levels.htm. Similarly, by the time the NDNY PO issued the October Letters, Plaintiff was subject to an order of protection issued by the New York Family Court, directing him to stay away from his minor child. *See* Blain Decl., Ex. A. Further, the NDNY PO had access to information detailing Plaintiff's sex crimes, which revealed that he had been diagnosed as a sexual sadist, that he was engaged in making child pornography, and that he was likely to repeat his sexual crimes against minors. *See* Blain Decl., Ex. F.

---

[10] Although the Officers respectfully submit that the Court can take judicial notice of the documents cited herein, *see, e.g., Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir. 1999), the Court may convert the motion to dismiss to one for summary judgment, pursuant to Federal Rule of Civil Procedure 12(d).

Based on those facts, the Officers reasonably believed that limiting Plaintiff's interaction with children did not violate any constitutional right Plaintiff might have had regarding Halloween celebrations or temporary modifications to his supervised release. Indeed, the restrictions imposed upon Plaintiff were imposed for only one evening and narrowly tailored to minimize his opportunity to interact with, and therefore temptation to commit criminal acts with, minors. Furthermore, the restrictions imposed upon Plaintiff were in keeping with the conditions later imposed by the district court. As a result, the Officers are entitled to qualified immunity and Plaintiff's constitutional claims for money damages must be dismissed. *See, e.g., Anderson*, 483 U.S. at 640-41 (rejecting the argument that officers who conducted an unreasonable search could not, as a matter of law, be entitled to qualified immunity, as qualified immunity protects those officers who reasonably yet mistakenly believe their conduct is reasonable); *Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir. 2001) (finding that a defendant is entitled to qualified immunity grounds "if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officers of reasonable competence could disagree on the legality of the defendant's actions").

## CONCLUSION

For the foregoing reasons, Plaintiff's Amended Complaint should be dismissed.

Dated: New York, New York
   September 14, 2012

         Respectfully submitted,

         PREET BHARARA
         United States Attorney
         Southern District of New York


         */s/ Ellen Blain*
By:  ELLEN BLAIN
   Assistant United States Attorney
   86 Chambers Street, 3rd Floor
   New York, New York 10007
   Tel.: (212) 637-2743
   Fax: (212) 637-2730

**Zielinski v. Defreest, _et al._**
**No. 12 Civ. 1160 (JPO)**

**CERTIFICATE OF SERVICE**

I, Ellen Blain, an Assistant United States Attorney for the Southern District of New York, hereby certify that on September 14, 2012, I caused a copy of the following:

      (i)      Notice of Motion by the Defendants to Dismiss the Amended Complaint;
      (ii)     Memorandum of Law in Support thereof;
      (iii)    Notice to Pro Se Litigant Pursuant to Local Civil Rule 12.1;
      (iv)    Copies of all unpublished decisions, in accordance with Local Civil Rule 7.1(c);
      (v)     The Declaration of Ellen Blain, dated September 14, 2012, and exhibits thereto,

to be served by Express Mail, delivery charges pre-paid, upon the following:

Jeremy Zielinski
P.O. Box 231
Hagaman, New York 12086

Dated: New York, New York
      September 14, 2012

                                             _____ _/s/ Ellen Blain_____
                                             ELLEN BLAIN
                                           Assistant United States Attorney